## EMPLOYEE INJURED BY THE BREAKING OF A ROPE AT A POINT WHERE IT HAD BEEN "MARRIED."

Circuit Court of Cuyahoga County.

THE GUY & RALPH GRAY CO. v. ALEC LARSON.

Decided, June 21, 1907.

*Use of Rope Improperly Repaired May be Negligence.*

Where the owners of a vessel use a rope which has been repaired by "marrying" the broken ends together, instead of splicing them, and in raising a sail the ends part and allow a pulley to fall upon an employee, they are guilty of negligence.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

On the 25th day of July, 1904, the plaintiff was injured by the falling of a pulley block upon his head, on the lake vessel "Plymouth." By this accident the plaintiff was greatly injured. He brought suit to recover damages for this injury. The result was a verdict and judgment in his favor.

The parties here stand in the reverse order of their standing in the court of common pleas. In this opinion, the word "plaintiff" and the word "defendant" will be used as the parties stood in the court of common pleas. The claim of the plaintiff was that at the time of the injury he was an employee of the defendant, who owned the "Plymouth"; that he was on the vessel as such employee when the mate, who was in charge of the vessel at the time, was using a 1½ inch rope through three heavy sheaved wooden blocks. That for this work a rope was used passing over the pulleys in three pulley blocks; that the rope in use on these pulleys had become rotten and unfit for use, so that it became necessary to repair it; that in making the repairs the rope was cut, a part of it taken out, and then the two ends left by the removal of this part so taken out, were fastened together by a process called "marrying," which consists in sewing together the two ends of the rope by means of cord; that this marrying having been done, the rope was used to raise or

swing out the gaff on one of the sails of the vessel. To perform this work two of the pulley blocks were fastened above, or "aloft" as it is expressed in the petition, and the other pulley was down toward the deck; that in attempting to draw the rope thus married over one of the pulleys, the parts which had been married, separated, allowing the lower pulley, which should have been, as alleged in the petition, near the deck, to fall or swing against the plaintiff, and cause the injury complained of.

The negligence charged in the petition is that the defendant was negligent and careless in not having fastened said lower block to the deck or to some portion of the vessel below, and that it was negligent and careless in not splicing said rope, as said mate knew or ought to have known by the exercise of ordinary care that sewing together the two ends of the ropes would not be sufficient to bear the weight that would be put upon it.

It is not denied that plaintiff was severely injured, but it is claimed that under the facts the jury should not have found that he was an employee of the defendant.

The evidence shows that the vessel came into the port of Cleveland on Friday, the 22d of July; that on the trip which was then ended, the plaintiff was a sailor on this vessel; that on that Friday morning the crew was paid off, including the plaintiff. The plaintiff was then asked if he would go on the next trip, and he answered that he would. He was told that he might be absent from the vessel a part of Saturday. He did leave the vessel and was absent till the evening of that day. When he returned to the place where the vessel was at the time he left it, which was at the lumber dock, she was pulling out, and he called to some one on board to know where she was going, and was told that she was going round to the Ellsworth coal dock. Thereupon he went to that dock, and he says that when the vessel drew up to the dock, a line was thrown out which he caught, and he helped the crew to make the boat fast. He says that he went on deck that night; that he then left the boat, and was gone until Monday; that on Monday he returned to the boat, about half past seven o'clock in the morning; that during all of that time he left his clothing

on board, that he had no intention of abandoning his employment; that he went on board for the purpose of carrying out his contract of employment, which it is admitted was made on the morning that he was paid off; that he started to get his overalls to wear during the performance of his work on the boat, stopping to talk with a fellow sailor, when the accident occurred.

On the other hand it is testified that on Sunday he went upon the boat to pack his clothing, as though to take it from the boat, although it is not claimed that he actually took his clothing away.    This he denies.

The jury found that at the time of this accident he was an employee of the company.

As has already been stated, it is admitted that what took place on Friday morning about his returning to the boat, constituted a contract of employment.    This contract continued to run until he was either discharged by his employer, or he abandoned his employment.    If the jury believed him, they might well have found that he did not abandon his employment, and it is not claimed that he was ever notified by the defendant that he was no longer in its employ; the mate who had charge of the vessel saw him when he was there on Monday, and if the plaintiff is to be believed, must have seen that he was there apparently to go to work on the boat, yet he said nothing to him intimating that his services would not be required.

We think that the jury might well have found that he was, at the time of this accident, an employee of the defendant.

This brings us to a consideration of the question of whether there was negligence on the part of the defendant causing the injury complained of.    The evidence shows that the injury naturally followed from the breaking of this rope, or rather the separation of the parts which had been "married" together.

Was that separation such as should reasonably have been anticipated?

As a part of the bill of exceptions in the case we find a rope with two ends fastened together by the captain of the vessel, upon the trial, for the purpose of showing how parts of rope are married together.

Surely the jury were warranted in finding that this marrying was done as well as marrying would usually be done when it was desired to fasten together parts of rope.  Indeed, it was done in the presence of the jury to show what the situation of the rope was after the marrying had taken place.  The rope separated at the point where it was married, and allowed the lower block to drop or swing away in such a way as to injure the plaintiff.  This separation occurred, so far as can be learned from the evidence, at the time when the married part of the rope was sought to be drawn through the block.  For some reason the rope failed to pass over the pulley freely; thereupon the men doing the pulling, under the direction of the mate of the vessel, applied greater power to pulling the rope over this pulley.  We think the jury was justified in finding that the separation might have been anticipated. It is said that this marrying was for a temporary purpose only, and that it was customary to so fasten ends of rope to each other for temporary purposes.  On the point last named, there is a conflict in the evidence.  The fact that the ends were fastened together so that the rope might be used for a temporary purpose did not in any wise relieve the employer from anticipating danger during such use, except as to time.  That is to say if this manner of putting the ends of the rope together was unsafe and dangerous, and one which was likely to result in the separation of the two ends of the rope by drawing it over a pulley, then it was dangerous to use it for temporary purposes.

The case was properly given to the jury by the trial judge in his charge.  The principles of law by which the verdict should be rendered were clearly announced, and the result was not such as to justify the court in sustaining a motion for a new trial, and the judgment is therefore affirmed.